## BALL v. THE STATE.

INTOXICATING LIQUOR.—*Sale to Minor for Medical Purposes.*—A person who sells intoxicating liquor, on a proper occasion, in good faith and with due caution, for medical purposes only, is as much shielded by the spirit of the act of February 27th, 1873, as if he were exempted from the penalties of the act by express words. This rule is applicable to sales to minors.

From the Montgomery Circuit Court.

*M. D. White, J. E. McDonald, J. M. Butler, F. B. McDonald,* and *G. C. Butler,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

BIDDLE, C. J.—Prosecution by affidavit and information, against the appellant, for selling intoxicating liquor to Albert G. Naylor, a minor.

A motion to quash the proceedings was properly overruled, and needs no further notice.

The appellant pleaded not guilty, was tried by a jury, convicted, and fined.

The evidence and instructions are properly before us, and errors regularly assigned questioning their validity.

Albert G. Naylor testified: "My name is Albert G. Naylor; am going to school at Waveland; live, when at home, at Terre Haute; I got liquor from the defendant, which was intoxicating; got it for medicinal purposes; the liquor I got was called 'Warner's English Gin,' put up in sealed bottles; I got the liquor on the 2d day of May, 1873, took it to my room at my boarding house, and got intoxicated on it on the 3d day of May; I told the defendant, when I first went to him, I wanted it as medicine; he refused to let me have it; I then went to Dr. Steele, after seeing him; I took a prescription from the doctor to Mr. Ball (defendant); on the prescription I got the gin; I am sixteen years old."

On behalf of the defence, Dr. A. T. Steele testified: I am a physician, engaged in a general practice; have been practising sixteen years at Waveland; I made no examination of Naylor, but made the prescription on the statement he made

of his condition, and what he had been using for the disease before at Terre Haute; the gin was a remedial and proper medicine for the treatment of the disease that he represented to me he was laboring under." (Prescription shown him.) "I gave this prescription to young Naylor."

The defendant, Zephaniah M. Ball, testified: (Here the prescription was shown and read to the jury: "May 1st, 1873. Ŗ. English gin, one bottle for A. G. Naylor. STEELE.") "The prescription was presented to me by young Mr. Naylor; he came complaining of being sick, and wanted the gin, and I told him I could not sell it to him, and refused to let him have it; he went away, and in two or three hours afterwards came back with the doctor's prescription; I then let him have a bottle of gin; it is called 'Warner's English Gin,' and comes in bottles sealed up, with paper covers; this gin is an intoxicating liquor; I regarded the prescription of Dr. Steele as a *bona fide* prescription, and sold the gin to young Naylor in the utmost good faith."

Among other instructions given to the jury, the court gave the following:

"It is for the jury to determine what right defendant, Ball, had to sell liquor to a minor on the prescription of a physician. The defendant, Ball, cannot shelter himself under the prescription of Dr. Steele, even if the defendant sold the 'English Gin' to this minor on the prescription of Dr. Steele, in ever so good faith; the defendant must go a step further, he must follow the article sold, and see that it is not used for any other purpose than for medicinal purposes by such minor. And if the minor afterwards used it as a beverage you should find the defendant guilty."

The main rule in construing a statute is to give rational and practical effect to the intention of the law-making power. All other rules fall within this fixed principle of jurisprudence. A clause in a statute which is repugnant to the general act, and cannot be construed in harmony with it, must be held inoperative; so, in construing a statute, all effects which are unnatural, absurd, or unjust must be held as implied excep-

tions, the same as if they were expressed in words. Thus, the law mentioned by Puffendorf, which forbade a layman to "lay hands on a priest," was held to extend only to him who had hurt a priest with a weapon ; and the Bolognian law, also from Puffendorf, which enacted that "whoever drew blood in the street should be punished with the utmost severity," was held not to extend to the surgeon who opened a vein of a person that fell down in the street with a fit. These are trite examples, but very apt. *Lindley* v. *Braxton*, 27 Ind. 56 ; *The People* v. *Board of Commissioners, etc.*, 3 Scam. 153.

The intention of the legislature in enacting the statute of February 27th, 1873, plainly was to repress intemperance, and more particularly in section 6, on which this prosecution rests, to protect minors from the seductions of the bowl, and the indiscreet use of intoxicating drinks ; and although, in its terms, the act makes no exceptions in favor of druggists or physicians in selling and administering intoxicating liquors, when necessary for medical uses, yet it must not be held so inexorable as to override and destroy other rights, and prohibit the use of spirits for legitimate and necessary purposes, which are equally under the protection of the law. The instruction given to the jury by the court in this case would tend to prevent parents or employers from sending minors with prescriptions to druggists for medicines, which might happen to contain intoxicating liquor ; it would embarrass physicians in the administration of medicinal remedies, impose impracticable, if not impossible, duties on druggists, and often endanger the lives of patients. We cannot suppose that the legislature had any such intention in the enactment of the law ; and we think that any person who sells intoxicating liquor, on a proper occasion, in good faith and with due caution, for medical purposes only, is as much shielded by the spirit of the act as if he were exempted from the penalty by express words. In this view we are fully supported by our own authorities, as well as by those of other states. *Donnell* v. *The State*, 2 Ind. 658 ; *Thomasson* v. *The State*, 15 Ind. 449 ; *Haber* v. *The State*, 19 Ind. 457 ; and *Jakes* v. *The State*, 42 Ind. 473.

We think the court erred in giving the instructions to the jury, and that the evidence is insufficient to sustain the verdict.

The judgment is reversed, and the cause remanded, with directions to sustain the motion for a new trial, and for further proceedings.