**Reversed and Dismissed and Plurality and Dissenting Opinions filed October 13, 2020.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00894-CV

---

### HARRIS COUNTY APPRAISAL DISTRICT, Appellant

### V.

### IQ LIFE SCIENCES CORPORATION, Appellee

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2018-03250**

---

### D I S S E N T I N G   O P I N I O N

The plurality improperly (1) adjudicates a waived issue presented neither to the trial court nor on appeal, (2) applies principles of statutory construction to resolve an unambiguous statutory provision, (3) presumes the statutory scheme at issue creates an absurdity, (4) enlarges the plain language of a statute to reach a result contrary to the unambiguous plain language selected by the Legislature, (5) ignores the context of the purportedly ambiguous statutory language, and (6) assumes

Appellee's actual notice of its taxes alleviates the government's responsibility to comport with statutory law. Therefore, I forcefully dissent.

## I.    Relevant Facts

The facts are uncontested that Appellee's relevant taxes never became delinquent because they were timely paid. As noted by the plurality, Appellee concurrently filed its original motion for correction with "protests under [Texas Tax Code] section 41.411 asserting that HCAD had failed to send during 2013, 2014, and 2015, the notice of appraised valued called for by section 25.19 . . . ." The Harris County Appraisal Review Board did not grant Appellee relief.

Appellee then sought judicial review. Specifically, Appellee sought orders compelling the Harris County Appraisal District to correct its rolls and provide notice of appraisal; both remedies are statutorily authorized. Tex. Tax Code Ann. § 25.25(d); *compare id.* § 25.19 (mandating notice) *with id.* § 41.411 (authorizing protest for failing to give notice). Appellant filed a plea to the jurisdiction and in response, Appellee filed an affidavit swearing it "did not receive Notices of Appraised Value" regarding its business personal property for 2013, 2014, and 2015. Neither party argued to the trial court that the phrase "become delinquent" as applied creates an absurdity; instead, this issue was raised for the first time on appeal.

The trial court denied Appellant's plea to the jurisdiction. Appellant sought reconsideration (but still did not argue ambiguity). In its response, Appellee argued its taxes never "bec[a]me delinquent" because it timely paid the taxes due. The trial court denied Appellant's request for relief and Appellant timely appealed. Neither party argued Texas Tax Code sections 41.41(c) or 22.25(d) are ambiguous either to the trial court or on appeal.

## II.    Relevant Statutory Language

The relevant statutory language provides:

> [A] property owner who files notice of a protest . . . is entitled to a hearing and determination of the protest if the property owner files the notice prior to the date the taxes on the property to which the notice applies **become** delinquent.

Tex. Tax Code Ann. § 41.44(c) (emphasis added); *see also id.* § 25.25(d) ("At any time prior to the date the taxes **become** delinquent, a property owner or the chief appraiser may file a motion with the appraisal review board to change the appraisal roll to correct an error that resulted in an incorrect appraised value for the owner's property.") (emphasis added); and *id.* § 41.411 (entitled "Protest of Failure to Give Notice"). *Cf.* Tex. Tax Code Ann. § 41.44(a) (requiring protest be filed not later than the thirtieth day "after the date that notice to the property owner **was delivered** to the property owner") (emphasis added).

## III.  Waiver

Importantly, neither party argues the phrase "become delinquent" is ambiguous on appeal and an examination of the record reveals no one argued it was ambiguous to the trial court.[1]  Therefore, the purported ambiguity of the word "become" was not briefed; this briefing failure provided Appellee with neither notice nor an opportunity to be heard concerning an unpresented question the plurality erroneously finds controlling. *See generally* Tex. R. App. P. 38.1(f) ("The brief must state concisely all issues or points presented for review.").  Therefore, arguments concerning the ambiguity of the phrase "become delinquent" have been waived and "may not" be considered. *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 604

---

[1] Instead, Appellant's counsel specifically told the trial court at the hearing on the plea to the jurisdiction that "The inquiry is: What is the delinquency date?".  Unlike the plurality, I conclude Appellant should be estopped from reframing this material and strategic representation of the controlling issue to include a mutually exclusive argument that was never made; in other words, the controlling inquiry cannot be both "what is the delinquency date" and either (1) "was Appellee's timely payment delinquent within the meaning of the Texas Tax Code?" or (2) "is the phrase 'become delinquent' ambiguous?"

(Tex. 2012) ("When a party fails to preserve error in the trial court or waives an argument on appeal, an appellate court may not consider the unpreserved or waived issue."); *see also In re D.Z.*, 583 S.W.3d 284, 291 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Fundamental tenets underlying our shared rule of law prohibit us from answering a controlling question of law that was not presented to the trial court. *See Watts v. Oliver*, 396 S.W.3d 124, 133 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("A complaint that the trial court misapplied the law must be raised in the trial court."). Similarly, no one argued to the trial court that a plain-language application of the phrase "become delinquent" constitutes an absurdity; this failure also constitutes waiver. *See Fed. Deposit Ins. Corp.*, 361 S.W.3d at 604; *Watts*, 396 S.W.3d at 133. The plurality has elected to refrain from addressing these waivers or explaining why we should analyze waived issues.

## IV. Statutory Construction

The plurality finds that "This appeal presents questions of statutory construction." I disagree, particularly because neither party argued the word "become" is ambiguous to the trial court or on appeal. The statutory phrase "become delinquent" is clear and unambiguous; "therefore, there is nothing to be construed." *Gen. Am. Indem. Co. v. Pepper*, 161 Tex. 263, 339 S.W.2d 660, 661 (1960); *see also Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) ("[I]t is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.' If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms.") (internal citations omitted); *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992) (per curiam) (courts must apply ordinary meanings);

*Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex. 1987) (same); and 82 C.J.S. *Statutes* § 365 (2020) ("The rules of statutory construction are used only when the intent of the statute is unclear or ambiguous. The rules of statutory construction generally are used only in case of doubt, meaning where the intent or meaning of the statute is unclear or ambiguous . . . . If the statute conveys a clear and definite meaning, a court must give effect to the unambiguously expressed intent of the legislature and has no occasion to resort to rules of statutory interpretation.").

## V.    Absurdity

Ignoring waiver and applying the rules of statutory construction, the plurality's reliance thereon (as well as Appellant's insistence that we use them) is predicated upon an erroneous presumption that the trial court's ruling honoring the plain and ordinary meaning of the word "become" creates an unacceptable absurdity requiring judicial rectification. This results-oriented presumption that the Legislature chose the wrong word is impossible without an absurdity. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437 ("This general rule [requiring discernment of legislative intent from the plain meaning of the words chosen] applies unless enforcing the plain language of the statute as written would produce absurd results.") (citing *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999)).[2] Instead, it is the plurality's implicit conclusion (*i.e.*, that honoring the Legislature's

---

[2] *See also HDSA Westfield Lake, LLC v. Harris Cty. Appraisal Dist.*, 490 S.W.3d 558, 561 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("The main rule in construing a statute is to give rational and practical effect to the intention of the lawmaking power. All other rules fall within this fixed principle of jurisprudence. A clause in the statute which is repugnant to the general act, and cannot be construed in harmony with it, must be held inoperative. So, in construing a statute, all effects which are unnatural, absurd, or unjust must be held as implied exceptions, the same as if they had been expressed in words.") (citing *Entergy Gulf States, Inc.*, 282 S.W.3d at 437); *Atkinson v. State*, 79 S.W. 31, 32 (Tex. Crim. App. 1904) (quoting *Ball v. State*, 50 Ind. 595 (Ind. 1875)); and 82 C.J.S. *Statutes* § 365 (2020) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . . [I]t is ultimately the provisions of laws, rather than the principal concerns of legislators, that govern.").

plain language renders an absurdity despite the absence of any relevant argument to the trial court) that is absurd.

Specifically, the plurality concludes the Legislature could not possibly have intended for us to interpret the word "become" according to its plain meaning because it permits an outcome that is contrary to the overall purpose of the statute, *i.e.*, "that the appraisal rolls become fixed after property owners have been given adequate time to file their protests." *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 40 (Tex. 2018) (quoting *Anderton v. Rockwall Cent. Appraisal Dist.*, 26 S.W.3d 539, 543 (Tex. App.—Dallas 2000, pet. denied)). First, the plurality improperly presumes an adequate time has passed despite the plain language of the statute and the undisputed facts. Second, accepting the plurality's argument as a valid route to absurdity relies upon a heretofore non-existent and illogical rule of statutory construction, *i.e.*, plain-language statutory provisions that create an exception to the overall purpose of a statute are void as a matter of law by nature of their exceptionalness. This anti-logic (which the plurality has elected to leave unaddressed) creates countless absurdities directly contrary to controlling law.[3] The Legislature has every right to create any constitutionally-permissible exception it desires and the constitutionality of the exception at issue was not presented to the trial court or on appeal. Therefore, I thoroughly reject the plurality's contention that the application of the word "become" as written is absurd.

"The 'bar for reworking the words our Legislature passed into law is high, and should be. The absurdity safety valve is reserved for truly exceptional cases, and

---

[3] *See, e.g., Paxton v. City of Dallas*, 509 S.W.3d 247, 251 (Tex. 2017) (addressing statutory exceptions to the Public Information Act's embodiment of Texas policy to access "complete information about the affairs of government") (quoting Tex. Gov't Code Ann. § 552.001(a)); *City of Austin v. Whittington*, 384 S.W.3d 766, 799 (Tex. 2012) (addressing statutory exceptions to prohibitions on takings for economic development); and *Fresh Coat, Inc. v. K-2, Inc.*, 318 S.W.3d 893, 899-901 (Tex. 2010) (addressing statutory exceptions to indemnity).

6

mere oddity does not equal absurdity.'" *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 569 (Tex. 2014) (quoting *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013)).[4]   A generally-accepted standard for absurdity is whether the application involves "patently nonsensical results".  *See Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 495 (Tex. 2018) (citing *Combs*, 401 S.W.3d at 630).[5] I simply cannot conclude that allowing a party to seek judicial relief under these facts creates a patently nonsensical result, particularly given (1) the absence of any briefing to the trial court or on appeal concerning the legislative intent or history concerning the relevant statutory provisions, (2) an unambiguous statute, and (3) an uncontested sworn affidavit tending to evidence a violation of said statute.

## VI.   Common Usage

Even if I were to agree we should analyze a waived argument and apply the rules of statutory construction despite the absence of an absurdity, we are bound by the Texas Code Construction Act.  There, the Legislature has required the judiciary to read words and phrases in context and to construe them according to the rules of grammar and common usage.  *See* Tex. Gov't Code Ann. § 311.011.  Even if my understanding of common usage renders my definition of the word "become" unreasonable, I simply utilize a dictionary to determine its meaning.  *See Jaster*, 438 S.W.3d at 563 ("The place to look for the ordinary meaning of words is . . . a dictionary.") (quoting *Epps v. Fowler*, 351 S.W.3d 862, 873 (Tex. 2011) (Hecht, J.,

---

[4] *See also id.* at 570 ("[R]easonableness is not the standard for eschewing plain statutory language.") (quoting *In re Blair*, 408 S.W.3d 843, 859 (Tex. 2013) (orig. proceeding) (Boyd, J., concurring)); *Combs*, 401 S.W.3d at 630 ("A sales-tax exemption for tie pins, even if unintended, even if improvident, even if inequitable, falls short of being unthinkable or unfathomable.  The absurdity backstop requires more than a curious loophole.").

[5] *See also City of Fort Worth v. Rylie*, 602 S.W.3d 459, 467-68 (Tex. 2020) (citing *Combs*, 401 S.W.3d at 630); *Jaster*, 438 S.W.3d at 562 (citing *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011)); and *In re Transcon. Gas Pipeline Co., LLC*, 542 S.W.3d 703, 712 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding) (citing *Harris Cty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 128 (Tex. 2017)).

dissenting)). There, my common understanding of a commonly used term is confirmed. *Become*, Webster's Encyclopedic Unabridged Dictionary of the English Language 132 (Grammercy Books 1994) ("to come into being"). Therefore, the word "become" is unambiguous and we are obliged to apply it according to the plain language utilized by the Legislature. Tex. Gov't Code Ann. § 311.011; *see also Fitzgerald*, 996 S.W.2d at 865.

## VII. Context

Even if I were to agree we should analyze a waived argument, apply the rules of statutory construction, and ignore both the absence of an absurdity and common usage, the plurality is still mistaken. "We determine legislative intent from the entire act and not just isolated portions." *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008) (citing *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (citing *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (per curiam))). Anyone who follows this instruction and examines the entire Tax Code will find the Legislature repeatedly uses the phrase "becomes delinquent";[6] changing this phrase to mean "would have become delinquent" would both create multiple intolerable absurdities and contribute to uncertainty in the law

---

[6] *See, e.g.,* Tex. Tax Code Ann. § 33.41 (providing that a taxing unit may file suit in a court of competent jurisdiction to foreclose the lien securing payment or to enforce personal liability "at any time after its tax on property becomes delinquent"); *id*. § 111.017(a) ("Before the expiration of three years after a person becomes delinquent in the payment of any amount under this title, the comptroller may seize and sell at public auction real and personal property of the person."); *id*. § 33.01(a) ("A delinquent tax incurs a penalty of six percent of the amount of the tax for the first calendar month it is delinquent plus one percent for each additional month or portion of a month the tax remains unpaid prior to July 1 of the year in which it becomes delinquent."); *id*. § 11.201(d) ("The taxes and interest are due and become delinquent and incur penalties and interest as provided by law."); *id*. § 33.42(b) ("If a taxing unit's tax on real property becomes delinquent after the unit files suit to foreclose a tax lien on the property but before entry of judgment, the court shall include the amount of the tax and any penalty and interest in its judgment."); *id*. § 33.22(a) ("At any time after a tax becomes delinquent, a collector may apply for a tax warrant to any court in any county in which the person liable for the tax has personal property."); *id*. § 33.08(b), (c); *id*. § 33.11(a), (b); *id*. § 23.96(c); and *id*. § 42.42(b), (c).

(neither of which is addressed by the plurality). These statutes reveal that the phrase "becomes delinquent" is well-known to the Legislature and that it is used as a well-established term of art.[7] An examination of the Tax Code (as well as other statutes) also reveals the Legislature clearly knows the difference between the phrases "become delinquent" and "would have become delinquent". *Compare* n.6, *supra with* Tex. Tax Code Ann. § 26.09(d) ("Except as provided by Subsection (d-1), the amount of back taxes due incurs interest calculated at the rate provided by Section 33.01(c) from the date the tax **would have become delinquent** had the tax been imposed in the proper tax year.") (emphasis added); *see also id.* § 11.135(c) ("calculated from the dates on which the differences **would have become** due") (emphasis added); *id.* § 11.181(e) (same); *id.* § 11.201(a) (same); *id.* § 11.185(e) ("computed from the dates on which the taxes **would have become** due") (emphasis added); *id.* § 23.55(a) ("calculated from the dates on which the differences **would have become** due") (emphasis added); *id.* § 23.76 (same); *id.* § 23.86(a) (same); *id.* § 23.96 (same); and *id.* §§ 23.9807(a)(2) and (b)(2) (same); Tex. Bus. & Com. Code Ann. § 9.316(d),. (e)(1), (f)(1), (h)(2), and (i)(2); *id.* § 9.515(e); Tex. Ins. Code Ann. § 1105.007(1) ("premiums that **would have become** due on and after the policy anniversary") (emphasis added); *id.* § 1105.012(c) (same); *id.* § 1105.053(f)(1)(A) ("on or after the date of the change on which a premium **would have become** due had the change not occurred") (emphasis added); *id.* § 1105.007 ("correspond to premiums that **would have become** due on and after the policy anniversary") (emphasis added); Tex. Nat. Res. Code Ann. § 183.002(f) ("calculated from the dates on which the differences **would have become** due") (emphasis added); and

---

[7] *Cf. Am. Sur. Co. of N.Y. v. Bd. of Trs. of Indep. Sch. Dist. of Ft. Worth*, 224 S.W. 292, 293 (Tex. Civ. App.—Fort Worth 1919, no writ) ("The court finds that section 16 of chapter 8 of the present charter of Ft. Worth contains the following provision: 'Should any taxpayer suffer his taxes to become delinquent, that is to say, shall fail or refuse to pay same before February 1st of each year, then a penalty shall attach to the payment of same . . . .'").

Tex. Prop. Code Ann. § 24.053(a) ("If a trustee disclaims an interest in property that otherwise **would have become** trust property") (emphasis added).

Even when I examine the purported (but waived) ambiguity in context, I still have no cause to believe the Legislature meant anything other than what it said. *See Fitzgerald*, 996 S.W.2d at 866 ("[I]t is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent."); 82 C.J.S. *Statutes* § 365 (2020) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). I also have confidence that the Legislature (1) understands the nuances of the English language; (2) purposefully selected the word *become* because it meant "to come into being"; and (3) purposefully did not use the phrase *would have become*. *See Jones v. Tex. Dep't of Family & Protective Servs.*, 400 S.W.3d 173, 179 (Tex. App.—Austin 2013, no pet.) (presuming the Legislature (1) "knows the difference" between void and voidable orders and (2) chooses its language with care).

## VIII. Negation

The plurality acknowledges that, "We must give effect to each provision of a statute so that none is rendered meaningless or mere surplusage." *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016). The Legislature has clearly provided that "the chief appraiser shall deliver a clear and understandable *written notice* to the property owner of the appraised value of the property owner's property[.]" Tex. Tax Code Ann. § 25.19(a) (emphasis added). This notice must "separate real from personal property" and provide specific information. *Id.* § 25.19(b). Despite Appellee's sworn statement that it did not receive said notice, the plurality concludes judicial review is not warranted because Appellee received actual notice of the taxes it owed. The plurality fails, however, to consider the other statutorily mandated contents of the notice or discern whether Appellee was harmed

by Appellant's failure to provide same. *See id.* Therefore, the plurality's analysis improperly relieves the government from providing statutorily-guaranteed notice by failing to give effect to the statutory schemes (1) mandating said provision and (2) authorizing protests based on government failures to provide notice.

## IX. Enlargement

Even if I were to ignore waiver, the lack of ambiguity, the dictionary definition of the term, the remainder of the Texas Tax Code, other Texas statutes that use the phrase "would have become", and the negation of two separate statutory provisions, the plurality is still wrong. "When applying the ordinary meaning, courts 'may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning, and implications from any statutory passage or word are *forbidden* when the legislative intent may be gathered from a reasonable interpretation of the statute *as it is written.*'" *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993) (quoting *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 138 (Tex. App.—Austin 1986, writ ref'd n.r.e.) (emphasis in original); *see also Commonwealth of Mass. v. United N. & S. Dev. Co.*, 168 S.W.2d 226, 229 (Tex. 1942) (adding provisos to a statute "would extend the statute by implication, and no language in the statute authorizes a resort to implication to arrive at some other intent"); *Jaster*, 438 S.W.3d at 562 ("We must enforce the statute 'as written' and 'refrain from rewriting text that lawmakers chose.'") (quoting *Entergy Gulf States, Inc.*, 282 S.W.3d at 443); *State v. Silver Chevrolet Pickup VIN 1GCEC14T7YE257128 Tag No. 3TMX16*, 140 S.W.3d 691, 693 (Tex. 2004) (per curiam) ("We disagree and conclude that the court of appeals' rationale is flawed for two reasons. First, the court of appeals did not properly consider the most important rule of statutory construction — that the court must give effect to legislative intent . . . elevating instead the principle that forfeiture statutes

11

are to be strictly construed.  Nothing in the statutory language, though, indicates that the Legislature intended the result that the court of appeals reached.") (citations omitted); and 67 Tex. Jur. 3d *Statutes* § 78 (2003) ("The court must construe a statute according to what it says, not according to what the court thinks that it should have said, even if the court thinks some other approach might accord with good policy."). Despite this clearly established jurisprudence and the undisputed fact that Appellee's taxes never became delinquent, the plurality adds words to the statute and changes the meaning of the word "become" to mean "would have become".  "We cannot add words to a statute; that is solely the Legislature's prerogative." *Jasek v. Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 535 (Tex. App.—Austin 2011, no pet.) ("A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute.") (citing *Lee v. City of Houston*, 807 S.W.2d 290, 295 (Tex. 1991)).[8]

---

[8] *See also City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008) ("If the Legislature desires to amend the statute to add words so that the statute will then say what is contended for by the Estate, we are confident it will do so.  However, changing the meaning of the statute by adding words to it, we believe, is a legislative function, not a judicial function.") (citing 67 Tex. Jur. 3d *Statutes* § 85 (2003) (noting that it is for the Legislature, not the courts, to remedy deficiencies, if any, in laws)); *Fitzgerald*, 996 S.W.2d at 867 ("We may add words into a statutory provision only when necessary to give effect to clear legislative intent.  Only truly extraordinary circumstances showing unmistakable legislative intent should divert us from enforcing the statute as written.  No such extraordinary circumstances are present in this case, as the rest of this opinion discusses."); and *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985) ("Courts must take statutes as they find them.  More than that, they should be willing to take them as they find them . . . .  They are not responsible for omissions in legislation.  They are responsible for a true and fair interpretation of the written law.  It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.") (quoting *Simmons v. Arnim,* 220 S.W. 66 (Tex. 1920)).  *Cf. R.R. Comm'n of Tex. v. Miller*, 434 S.W.2d 670, 672 (Tex. 1968) ("This brings to mind the maxim that 'If Parliament does not mean what it says, it must say so.' . . . We may not invade the legislative field.  There is nothing ambiguous or uncertain about the literal meaning of the Act.") (quoting *Brazos River Auth. v. City of Graham*, 354 S.W.2d 99 (Tex. 1961)); and *In re Blair*, 408 S.W.3d 843, 848 n.25 (Tex. 2013) ("A provision may be either disregarded or judicially corrected as an error (when the correction is textually simple) if failing to do so would result in a disposition that no reasonable person could approve.") (quoting A. Scalia & B. Garner, Reading Law:  The Interpretation of Legal Texts 234 (2012)).

Additionally, the plurality's extension of the statute is prohibited because the statute (as applied) deprives Appellee of the common law and constitutional rights to notice and an opportunity to be heard.[9] Although the plurality concludes the plain-language application of the word "become" tends to thwart the overall purpose of the statute, "there are legitimate reasons why the Legislature may have chosen this approach." *See Jaster*, 438 S.W.3d at 569. We have been presented with neither reason nor argument why the Legislature could not, would not, or did not either (1) incentivize people to pay their taxes on time or (2) limit the remedies available to those who do not pay their taxes on time. Nothing about either one of these outcomes violates our obligation to presume "the Legislature intended a just and reasonable result by enacting the statute." *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) (citing Tex. Gov't Code Ann. § 311.021(3)). Therefore, we are not permitted to enlarge the meaning of the word "become" to

---

[9] *See generally* U.S. Const. amend. XIV, § 1 and Tex. Const. art. I, § 19. *Compare Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969) ("While Texas follows the rule that statutes in derogation of the common law are not to be strictly construed, it is recognized that if a statute creates a liability unknown to the common law, or deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." (quoting *Hickman v. Finlay*, 392 S.W.2d 147 (Tex. Civ. App.—Austin 1965, writ ref'd)) *with Holbein v. De La Garza*, 126 S.W. 42, 46 (Tex. Civ. App. 1910) ("'Audi alteram partem' is one of the maxims of the old civil law, and the doctrine that a man should not be condemned without a hearing is not only the instinct of justice, but this spirit breathes through the whole system of common law and especially through our system of equity, as distinguished from law, which seeks to temper the harshness of the common law and bring it more in harmony with the principles of abstract justice."); *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 324 (1945) ("It is true that this Court did use the terms 'fair play' and 'substantial justice' in explaining the philosophy underlying the holding that it could not be 'due process of law' to render a personal judgment against a defendant without notice to and an opportunity to be heard by him. *Milliken v. Meyer*, 311 U.S. 457 . . . In *McDonald v. Mabee*, 243 U.S. 90, 91 . . . cited in the *Milliken* case, Mr. Justice Holmes speaking for the Court warned against judicial curtailment of this opportunity to be heard and referred to such a curtailment as a denial of 'fair play', which even the common law would have deemed 'contrary to natural justice.'"); and *Hovey v. Elliott*, 167 U.S. 409, 415 (1897) ("At common law no man was condemned without being afforded opportunity to be heard.").

satisfy our legislative leanings.  *See Jaster*, 438 S.W.3d at 570 ("[W]e read unambiguous statutes as they are written, not as they make the most policy sense.") (quoting *Combs*, 401 S.W.3d at 629); *City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006) ("We must construe this statute according to what it says, not according to what we think it should have said.").

## X.    Conclusion

The plurality (1) acknowledges that the Tax Code's administrative procedures are the "exclusive" remedy "for anyone wanting to contest their property taxes", (2) disregards Appellee's sworn statement that it did not receive notice, and (3) concludes Appellee is not entitled to judicial review based on (a) waived arguments, (b) non-absurdities that were not briefed, (c) Appellee's receipt of actual notice (which somehow alleviates Appellant's responsibility to comport with statutory law), and (d) unambiguous and commonly used words that are impermissibly enlarged and taken out of context.  Characterizing an unambiguous word as ambiguous to justify applying rules of statutory construction (particularly in the absence of any relevant argument or briefing to the trial court or on appeal) is an unmistakably activist and dangerous attempt to supplant the will of the Legislature with the will of the judiciary.  Presuming the Legislature clumsily chose its words simply because we find the result of unambiguous plain language to be unwise is an unmistakable assault on the rule of law and our tripartite system of governance.  As a result, I dissent.


/s/    Meagan Hassan
Justice


Panel consists of Justices Zimmerer, Spain, and Hassan.  (Zimmerer, J., plurality, Spain, J., concurring in judgment without opinion).